```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

H.J.[1],

       Plaintiff,

vs.              Case No. 20-1183-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

       Defendant.

### **MEMORANDUM AND ORDER**

  This is an action appealing the denial of Social Security disability benefits.  Plaintiff filed her application for benefits on December 20, 2017, alleging that she has been disabled since May 1, 2017.  The administrative law judge (ALJ) conducted a hearing on March 21, 2019, considered the evidence, and decided on June 17, 2019 that plaintiff was not qualified to receive benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

### I. Standards of review

  To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] Plaintiff's initials are used to protect privacy interests.

"insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.   See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 15-28).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 16-17). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fourth and fifth steps of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through September 30, 2021. Second, plaintiff has not engaged in substantial gainful activity since May 1, 2017. Third, plaintiff has the following severe impairments: degenerative disc disease in the lumbar spine with disc herniation and radiculopathy status-post history of surgeries including laminectomy and discectomy; post-laminectomy syndrome; sciatica; and fibromyalgia.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that plaintiff:

4

should be allowed to sit, stand or walk alternatively, provided that she is off task less than 10% of the work period; should never climb ladders, ropes and scaffolds, kneel, crouch and crawl; should only occasionally climb ramps and stairs, balance, and stoop; can occasionally use foot controls bilaterally; should never work at unprotected heights, with moving mechanical parts and vibration; and should only occasionally work in extreme cold.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could perform her past relevant work as a human resources assistant.  The ALJ found alternatively that there are other sedentary jobs existing in the national economy that plaintiff can perform, such as document preparer, eye glass polisher and circuit board assembler.

III. The denial of benefits shall be affirmed.

Plaintiff's first argument in favor of reversing the denial of benefits is that "[s]ubstantial evidence does not support the ALJ's decision because he did not assess an RFC that reflected all the limitations the ALJ found credible."  Doc. No. 13, p. 8. Plaintiff refers specifically to the opinions of two of plaintiff's treating physicians, Dr. Jones and Dr. Moussa, and states that the RFC assessment "omitted portions of Drs. Jones and Moussa's opinions the ALJ found persuasive." Id.   Plaintiff contends that the ALJ accepted the opinions of Dr. Jones and Dr. Moussa that plaintiff needs to alternate positions at will, but did not

5

include this limitation in the RFC. The court disagrees. The RFC states that plaintiff "should be allowed to sit, stand or walk alternatively, provided that she is off task less than 10% of the work period." While the ALJ did not explicitly incorporate the words "at-will" in the RFC, the court agrees with defendant that the ALJ's phrasing "largely comports with the doctors' opinion that Plaintiff would need to shift positions at will." Doc. No. 14, p. 9. The vocational expert testified that plaintiff could not do a data expense clerk position if she were allowed "to sit, stand or walk alternatively" because that job requires "constant keying and constant near acuity and to have that kind of flexibility you can't do a function on a constant basis and still be up and down like that." (Tr. 66). This indicates that the participants in the hearing understood that by saying "alternatively" the ALJ meant "at will" or freedom to shift from sitting, standing or walking for comfort.

Plaintiff next cites SSR 96-9p and argues that the ALJ was not sufficiently specific in explaining plaintiff's need to shift positions in the RFC. Doc. No. 13, p. 10. For claimants who are limited to "[a]lternate sitting and standing," SSR 96-9p states that:

> The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to

6

>determine whether the individual is able to make an adjustment to other work.

1996 WL 374185 at *7 (7/2/1996).

The purpose of SSR 96-9 is to ensure that the limits placed upon the range of sedentary work by the ALJ are not too vague and are understood by the vocational expert and the parties in the case.[2] That purpose was satisfied here.

Plaintiff testified that she needed to shift positions from sitting or standing every 20 to 30 minutes.[3] (Tr. 50). The ALJ credited this testimony in his decision. He referred to it when he rejected portions of Dr. Jones' opinion that plaintiff could sit only 2 hours of an eight-hour workday. (Tr. 25). The vocational expert also referred to that capacity in her testimony when she gave an opinion regarding jobs that could be performed with plaintiff's RFC. The ALJ asked the vocational expert as a second hypothetical:

>[P]lease assume the exact same limitations as in that first hypothetical. However, I'd like to add to it that this individual should be allowed to sit, stand or walk

---

[2] This goal is revealed generally in the following excerpts from SSR 96-9: "An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource. The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues." 1996 WL 374185 *6 (7/2/1996). "[T]he adjudicator may use the resources of a . . . vocational expert . . . [who] may be asked to provide . . . [a]n analysis of the impact of the RFC upon the full range of sedentary work, . . . examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy." Id. at *9.
[3] The state agency consultants also noted that plaintiff reported that she could stand/walk/sit for at least 30 minutes at a time. (Tr. 80 and 97).

>     alternatively provided they're off-task less than 10% of
>     the time in the work period.

(Tr. 66). The vocational expert answered that the same jobs would be available - - human resources assistant, document preparer, eyeglass polisher and circuit board assembler - - and that those jobs are "generally performed . . . <u>alternating positions once or twice an hour</u> . . . for comfort." (Tr. 66-67)(emphasis added). Because these circumstances indicate an understanding supported in the record that plaintiff needed to alternate positions once or twice an hour, the court does not believe that the requirements of SSR 96-9p were violated by the ALJ.

Plaintiff cites this court's decision in <u>Verstraete v. Astrue</u>, 2013 WL 238193 *5 (D.Kan. 1/22/2013) to support reversing the denial of benefits. There, the court stated that Tenth Circuit rulings and District of Kansas decisions "clearly and consistently" indicate "that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing when plaintiff is limited to light or sedentary work." <u>Id.</u> In <u>Verstraete</u>, however, the court rejected an argument that the ALJ implicitly determined that plaintiff would have to change positions at most every 30 minutes, stating that it would "not imply such a finding by the ALJ, especially given that any specific finding by the ALJ would have to be supported by evidence in the record." <u>Id.</u> Here, as the court has just recounted, the record

8

supports finding that the ALJ implicitly determined that plaintiff should be able to alternate sitting, standing and walking once or twice an hour provided she was off-task less than 10% of the work period.  The court has examined the Tenth Circuit rulings and District of Kansas decisions cited in Verstraete at pp. *4-5 and finds that they are distinguishable on the same grounds.[4]

    Our decision finds support in Jimison v. Colvin, 513 Fed.Appx. 789 (10th Cir. 2013) which was decided after the Verstraete order. In Jimison, the ALJ's hypothetical to the vocational expert stated that the claimant could do sedentary work "either sitting down or standing up, whichever way she wanted to." Id. at 792.  When the claimant's attorney asked the expert if she considered this description as a "sit/stand option at will," the expert answered affirmatively and was not corrected by the ALJ.  Thus, the limits upon plaintiff's functional capacity by reason of the need to alternate sitting and standing were understood by the ALJ, the parties, and the vocational expert.  The expert went on to testify that the claimant could do the job of an order clerk or semiconductor assembler.   Id.  The Tenth Circuit held on appeal that the ALJ was specific as to the frequency of the need to alternate sitting and standing, as required by SSR 96-9p.  The court stated:  "The option to sit or stand at will permits the

---

[4] The court also finds the decision in Waltemire v. Colvin, 2014 WL 3809189 *6-9 distinguishable for the same reasons.

claimant to control the frequency at which she alternates positions. No greater specificity would be possible." Id.

In the case now before the court, as recommended in SSR 96-9p, the ALJ consulted a vocational resource to determine whether plaintiff was able to make an adjustment to other work in light of a need to alternate sitting and standing. Like the vocational expert in Jimison, the vocational expert here testified that plaintiff could perform other jobs (and her past relevant work) if she were limited to alternating sitting and standing for comfort once or twice an hour. While the ALJ could have been more specific in explicating plaintiff's need to alternate sitting and standing, through questioning of the vocational expert it was developed that plaintiff could perform certain sedentary jobs, including her past employment, even if she needed to alternate sitting and standing for comfort once or twice every hour, provided she was not off-task for 10% or more of the workday. This sufficiently comports with the RFC and, unlike Verstraete, with the ALJ's findings and the evidence in the record to provide substantial evidence in support of the denial of benefits.[5]

---

[5] See also Hendron v. Colvin, 767 F.3d 951, 957 (10th Cir. 2014)(failure of ALJ to explicitly find that claimant was capable of sitting for six hours during an 8-hour workday did not require reversal where ALJ found plaintiff could perform full range of sedentary work, the ALJ's reasoning in rejecting sitting limitations could be followed, and the omission could be considered a mere technicality).

The remainder of plaintiff's arguments basically repeat the contentions that the RFC did not adequately describe plaintiff's need to alternate positions at will and that the ALJ's hypotheticals failed in the same regard.  We reject these arguments for the above-stated reasons.

IV. Conclusion

As explained in this memorandum and order, the court rejects plaintiff's arguments to reverse and remand the denial of benefits to plaintiff.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 9th day of March 2021, at Topeka, Kansas.

> s/Sam A. Crow
> U.S. District Senior Judge